*In re* José A. Clavell Ruiz, querellado.

*Número:* O-83-826 *Resuelto:* 4 de septiembre de 1992

502

*Roberto Schmidt Monge, Procurador General, Rafael Ortiz Carrión, Procurador General, Eliadís Orsini Zayas, Procuradora General Auxiliar*, abogados del Estado Libre Asociado; *José A. Clavell, pro se.*

PER CURIAM: A raíz de los procedimientos que se llevaban a cabo en el Tribunal Superior, Sala de Ponce, en relación

con la herencia de la Sra. Isabel Luberza Oppenheimer, mejor conocida como "Isabel la Negra", la Oficina de la Administración de los Tribunales realizó una investigación y sometió un informe a este Tribunal sobre la conducta profesional del Hon. Juez Carlos D. Bonaparte y los abogados Alfredo Mora, José A. Clavell Ruiz y José A. Cangiano.

El licenciado Clavell Ruiz representaba a algunos miembros de la sucesión Luberza Oppenheimer que impugnaban la capacidad de heredero testamentario del Sr. Manuel Morales, quien fuera hijo de crianza de Doña Isabel.(¹) Por su parte, el licenciado Cangiano fungía como Administrador Judicial del caudal relicto, mientras que el Lcdo. Alfredo Mora era el abogado del Sr. Manuel Morales.

Mediante Resolución de 22 de octubre de 1981 referimos el caso a la Oficina del Procurador General para que reinvestigara los hechos y rindiera otro informe con las recomendaciones procedentes.(²) El 22 de diciembre de 1983 el Procurador General presentó una querella contra el licenciado Clavell Ruiz en la que le formuló cinco (5) cargos por conducta antiética durante la tramitación del caso de la herencia de Doña Isabel Luberza en el Tribunal Superior, Sala de Ponce. Posteriormente, designamos al Lcdo. Manuel J. Vera Mercado como Comisionado Especial para que oyera y recibiera la prueba.

Luego de celebradas varias vistas de las que se ausentó el querellado, a excepción de una, el 25 de noviembre de 1985 el Comisionado Especial sometió su informe. Procedemos a examinar las conclusiones de hecho a que llegó el Comisionado Especial con respecto a cada cargo formulado por el Procurador General.

---

(¹) Le imputaban al Sr. Manuel Morales indignidad por haber estado supuestamente implicado en la muerte de la testadora. Esta alegación fue investigada por la Policía de Puerto Rico y posteriormente archivada.

(²) Conforme los hallazgos contenidos en el nuevo Informe de 27 de junio de 1983, ordenamos mediante Resolución de 20 de octubre de 1983 que se presentaran cargos contra el licenciado Clavell Ruiz únicamente.

*Informe del Comisionado Especial*

### A. *Primer cargo*

En el primer cargo, el Procurador General alega que "[e]l Lcdo. José A. Clavell actuó en forma ilegal, inmoral y antiética, cuando en unión y/o de común acuerdo con sus representados o clientes intoxicó de alcohol al heredero testamentario, Sr. Manuel Morales, ebrio habitual, induciéndolo a firmar un documento cuyo propósito era renunciar la herencia, a la cual tenía derecho. Dicha conducta refleja una indebida intervención con una parte, en un caso, violando con su conducta el Canon 5, 8, 18 y 28 de los de Ética Profesional".

En torno a este primer cargo concluyó el Comisionado Especial que el 9 de octubre de 1975, a eso de las 8:00 de la noche, se acercaron al Lcdo. Luis R. Cordero González cuando éste salía de su oficina, el licenciado Clavell Ruiz, el Sr. José Luberza, cliente del querellado en el caso antes mencionado, y el Sr. Manuel Morales, heredero impugnado. Estos se aproximaron al licenciado Cordero, unos con los brazos sobre los hombros del otro, en medio de los cuales se encontraba el señor Morales. Este aparentaba estar en estado de embriaguez, pues lucía desaliñado, al tiempo que miraba y hablaba incoherentemente.

El querellado le pidió al licenciado Cordero que le tomara una declaración jurada al señor Morales, el cual se proponía renunciar a su herencia. Cordero González se negó aduciendo que el estado en el que se encontraba el heredero no era el apropiado para este tipo de renuncia. Al mismo tiempo enfatizó el hecho de que el señor Morales estaba representado por otros abogados en el caso, por lo que sería antiético de su parte acceder a tal pedido. Ante la insistencia del querellado, el licenciado Cordero se marchó del lugar.

Al día siguiente el señor Morales se presentó en el Tri-

bunal Superior con un documento escrito a maquinilla, en papel legal y con el formato y terminología de un documento legal, en el cual renunciaba a su herencia en favor de los representados por el querellado. Según atestó el Hon. Juez Carlos D. Bonaparte, quien tuvo ocasión de encontrarse con el señor Morales en el tribunal, éste parecía estar en estado de embriaguez. Esta renuncia fue posteriormente revocada por el tribunal a petición del propio heredero y del administrador judicial de la herencia, Lcdo. José A. Cangiano, por el fundamento de que la misma no fue hecha libre y voluntariamente. El heredero alegó haber sido embriagado y amenazado por el licenciado Clavell Ruiz, situación ante la cual se vio precisado a efectuar la renuncia.

## B. *Segundo cargo*

El segundo cargo imputa que "[l]a conducta descrita en el cargo primero también acusa conducta antiética e inmoral por parte del Lcdo. Clavell Ruiz al inmiscuirse impropiamente en la gestión profesional de otro abogado -él; o los representantes legales del Sr. Manuel Morales violando por tanto el Canon 27 de los de Ética Profesional con dicha actuación".

En cuanto a este segundo cargo, el Comisionado Especial determinó que el licenciado Clavell Ruiz, a sabiendas de que el señor Morales estaba representado legalmente por el Lcdo. Alfredo Mora, intervino con él cuando le tomó una declaración jurada en la que se hacían graves imputaciones a la administración de los bienes del caudal hereditario.

## C. *Tercer cargo*

También se le imputa al licenciado Clavell Ruiz haber actuado "[e]n forma antiética ilegal, inmoral y altamente repudiable a través de todos los procedimientos relaciona-

dos con la herencia de Isabel Luberza Oppenheimer alias Isabel "La Negra", cuando a través de los mismos, se dedicó a atacar injustificadamente tanto a los abogados de la parte adversa como a todos los jueces que intervinieron en el caso. Dicha conducta acusa violación al canon 9, y 29 de los de Ética Profesional".

En lo que toca a este tercer cargo, el Comisionado Especial concluyó, en síntesis, que el querellado hizo imputaciones y ataques a varios funcionarios que participaron en los procedimientos del referido caso. Puntualizó el Comisionado que frecuentemente el querellado insistía vehementemente en sus planteamientos ante el tribunal, cuando los mismos no eran atendidos con la premura que él estimaba procedente. Asimismo, el licenciado Clavell Ruiz solicitó y obtuvo la inhibición de todos los Jueces Superiores, Sala de Ponce, y solicitó el traslado del caso a San Juan.(3)

### D. *Cuarto cargo*

En el cuarto caso alega el Procurador General que "[e]l licenciado Clavell Ruiz violó el canon 13 de los de Ética Profesional al recurrir a diferentes foros a radicar querellas y/o solicitar y promover investigaciones inmeritorias relacionadas con personas que en una u otra capacidad participaban en el caso que nos ocupa, obstaculizando con dicha conducta la debida administración de la justicia".

Se concluye en el cuarto cargo que el querellado, a nombre de sus representados, se comunicó mediante carta con el entonces Secretario de Justicia, Hon. Miguel Giménez Muñoz, solicitándole la reapertura del caso del asesinato de doña Isabel. Imputó en dicha misiva que la investigación practicada por el Fiscal que investigó estos hechos fue negligente y parcializada. Fundamentó esta imputación en

---

(3) El Comisionado Especial señaló en su informe que, aunque no convenía con el estilo de práctica profesional empleado por el querellado durante el proceso, consideraba que éste no se extralimitó ni rebasó los límites de la prudencia.

la relación de amistad y compadrazgo con el licenciado Cangiano, administrador judicial de la herencia. Se cita en este informe parte del texto de la carta, en el que se alude a un conflicto de intereses "que envuelve hasta magistrados". A renglón seguido señala que esa situación estaba siendo investigada por la Administración de los Tribunales.[4] También se hacen imputaciones de manejos ilegales de fondos del caudal relicto por parte del licenciado Cangiano. Se envió copia de esta carta al Gobernador de Puerto Rico, al Superintendente de la Policía y al director del N.I.C. del área sur.

Además de lo anterior, en ocasión de celebrarse las vistas de la Comisión de lo Jurídico del Senado sobre el crimen organizado, compareció el querellado con un voluminoso expediente de documentos relacionados con la muerte de doña Isabel. Aunque no se hacen determinaciones de hecho acerca de a quién se implicaba con el crimen organizado, por tratarse de documentos relacionados con el caso de la herencia de Doña Isabel Luberza y tomando en consideración el expediente en su totalidad, resulta evidente que se implicaba al licenciado Cangiano. La Comisión Senatorial declinó investigar el asunto para no interferir con otras investigaciones oficiales.

## E. *Quinto cargo*

En cuanto al quinto cargo se alegó que "[e]l Lcdo. José Clavell Ruiz violó lo dispuesto en la Ley Núm. 9 del 8 de agosto de 1974, sobre fijación de honorarios contingentes, en el acuerdo de honorarios que suscribió con su cliente Augusta Luberza de Elli, al fijar el cobro de sus honorarios en la suma del 50% de lo obtenido. La anterior conducta

---

[4] Aparentemente se hacía referencia a la investigación que originó este proceso disciplinario comentado originalmente y en el que se investigaba al Juez Bonaparte. Se recordará que el mismo fue archivado por este Tribunal.

también acusa violación al Canon 24 de los de Ética Profesional".

En lo correspondiente a este último cargo, quedó establecido que el querellado suscribió contratos con varios de sus representados en el caso de referencia en los que se convino el cincuenta por ciento (50%) en honorarios contingentes exclusivamente. Otros gastos del pleito serían por cuenta de los clientes.

Una vez transigido el pleito, y a pesar del asombro del juez que aprobó la transacción, el querellado reclamó precisamente el pago del cincuenta por ciento (50%) de la cuantía objeto de la misma, la cual ascendía a un total de cuarenta mil dólares ($40,000). Argumentó ante este foro la naturaleza contractual de tales honorarios. El juez accedió y ordenó que se pagaran veinte mil dólares ($20,000) al querellado mientras que la diferencia de veinte mil dólares ($20,000) fue entonces distribuida entre sus clientes.

## II

*Ética — Derecho aplicable*

■ Los cánones de ética profesional enuncian los deberes de respeto y profesionalismo que debe caracterizar a todo jurista y letrado en el desempeño de su trabajo frente a sus clientes y colegas ante todo foro en que ejerza. Dichos deberes constituyen un compromiso constante para con la sociedad puertorriqueña. Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

■ En lo pertinente al presente caso, el Canon 5 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, dispone que "[s]erá también altamente reprochable que un abogado produzca ante un tribunal prueba falsa, con pleno conocimiento de su falsedad". También es reprochable que un abogado se valga de amenazas con el propósito de salir triunfante en las causas del cliente. Canon 18 del Código de

Ética Profesional, 4 L.P.R.A. Ap. IX; *In re Ramos Acevedo*, 106 D.P.R. 275 (1977); *In re Colton Fontán*, 128 D.P.R. 1 (1991). Además, todo abogado "debe abstenerse de aconsejar o incurrir en conducta que pueda inducir a error a una parte que no esté a su vez representada por abogado". Canon 28 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

Por su parte, el Canon 8 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, impone la obligación al abogado, en la relación profesional con su cliente, de no permitirle a éste que incurra en conducta que resultaría impropia si el mismo abogado la llevara a cabo. Véanse: *In re Ramos Acevedo*, supra; *In re Vázquez Báez*, 110 D.P.R. 628 (1981). Debe evitarse, además, "[t]odo esfuerzo, directo o indirecto encaminado a inmiscuirse en cualquier forma en la gestión profesional de otro abogado". Canon 27 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

Reiteradamente hemos impuesto sanciones disciplinarias a abogados que hacen imputaciones orales o escritas, sin fundamentos y mediante el uso de lenguaje impropio y ofensivo, contra los jueces y demás funcionarios del tribunal. Véanse: Canon 9 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX; *In re Andréu Ribas*, 81 D.P.R. 90 (1959); *In re Pagán Hernández*, 105 D.P.R. 796 (1977); *In re Martínez, Jr.*, 108 D.P.R. 158 (1978); *In re Pagán*, 116 D.P.R. 107 (1985); *In re Cardona Álvarez*, 116 D.P.R. 895 (1986); *In re Vargas Soto*, 127 D.P.R. 576 (1990). Asimismo, es altamente impropio que un abogado haga imputaciones falsas que afecten la reputación y el buen nombre de otro compañero abogado. Véanse: Canon 29 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX; *In re Roldán González*, 105 D.P.R. 498 (1976).

En protección de la debida administración de la justicia y para evitar la obstaculización de procesos judiciales imparciales, todo abogado debe abstenerse de facilitar de

cualquier forma la publicidad, a través de cualquier medio informativo, de su opinión con respecto a pleitos pendientes o a hechos que señalen la probabilidad de casos en el futuro. Véanse: Cánones 13 y 14 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX; *In re De Jesús Rivera*, 102 D.P.R. 357 (1974); *Pueblo v. Pérez Santaliz*, 105 D.P.R. 10 (1976).

Finalmente, en *López de Victoria v. Rodríguez*, 113 D.P.R. 265, 268 (1982), establecimos, como factor determinante para sostener la eficacia de los términos de un contrato de servicios profesionales de abogados, que la remuneración a éste se mantuviera "dentro de unos límites que no rebasen la línea imaginaria que separa los honorarios altos perfectamente lícitos, y los que operan como abuso y opresión de una clase privilegiada contra el consumidor de servicios". La profesión de la abogacía no es un mero negocio con fines de lucro, y uno de los factores a considerarse en la fijación de honorarios profesionales son aquellos que acostumbradamente se cobran en el distrito judicial por servicios similares. Canon 24 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX; *In re Díaz Lamoutte*, 106 D.P.R. 450 (1977). Véanse, además: *Ramírez, Segal & Látimer v. Rojo Rigual*, 123 D.P.R. 161 (1989).

## III

*Violaciones éticas incurridas*

De las conclusiones de hecho del Comisionado Especial y de un examen detenido de toda la prueba testifical y documental presentada por las partes, se advierte en efecto la violación de los cánones de ética profesional imputados al Lcdo. José A. Clavell en la querella del Procurador General.

## A. *Primer cargo*

Respecto al primer cargo, en el que se le imputa haber embriagado y presionado al señor Morales para que renunciara a la herencia, si bien el Comisionado no pareció concluir que tal situación se produjera, la conducta general observada por el querellado en torno a esta renuncia apunta hacia una intervención irregular, impropia e indebida de éste en contravención de los Cánones 5, 8, 18 y 28 del aludido Código.

Del Informe del Comisionado Especial y de los autos surge que el licenciado Clavell y uno de sus representados estaban junto al heredero al momento en que éste opta por renunciar a la herencia. Surge, además, que nunca antes el señor Morales había expresado su deseo de efectuar tal renuncia. Resulta cuestionable, por otra parte, por qué deseaba el señor Morales, siendo único y universal heredero, renunciar a la herencia de la cual dependía sustancialmente para su subsistencia. Más aún, por qué hacerlo tan precipitadamente y con la intervención del abogado de la parte adversa. Cabe señalar que pocos días después de su "renuncia", el señor Morales dio marcha atrás alegando haber actuado bajo amenaza del licenciado Clavell.

Lo antes expuesto nos permite concluir razonablemente la veracidad de lo imputado en este primer cargo. La conducta del querellado podría entrañar, no solamente un acto indebido a la luz de la ética profesional, sino que también algún tipo de fraude criminal, con lo cual se violenta, más que un canon profesional, una norma de convivencia social. La prueba presentada en este caso demuestra fehacientemente una indebida intromisión, no sólo con un testigo contrario, sino más bien con la parte adversa, con el claro propósito de perjudicarla en el caso. Véanse: *In re Ramos Acevedo*, supra; *In re Vázquez Báez*, supra.

## B. *Segundo cargo*

En el segundo cargo se le imputa al querellado inmiscuirse impropiamente en la gestión profesional de otros abogados.

Precisamente, los hechos expuestos en el primer cargo sostienen esta imputación, así como las propias conclusiones del Comisionado Especial. Se recordará que éste concluyó que el licenciado Clavell tenía conocimiento de que el señor Morales estaba representado por el licenciado Mora y/o por el licenciado Cangiano cuando intervino impropiamente con él. Téngase en mente que tal intervención no se limitó a lo referente a la renuncia de la herencia sino, además, a la toma de un testimonio oral y jurado que no fue firmado por el señor Morales pero sí certificado por el licenciado Clavell. En el mismo se hacían serias acusaciones al licenciado Cangiano sobre la administración de los bienes hereditarios y también se imputaba conducta impropia al Juez Bonaparte. Véase *Exhibit* VI, pág. 1077. Estas acciones están claramente vedadas por el citado Canon 27 del Código de Ética Profesional.

## C. *Tercer cargo*

A pesar de la deferencia que merecen las conclusiones de hecho de un Comisionado Especial, de la totalidad del expediente se infiere que la prueba presentada por el Procurador General demostró con razonable claridad que el licenciado Clavell Ruiz infligió violentos e injustificados ataques contra varias personas que participaron en los procedimientos en el tribunal de instancia en relación con el caso de la Sra. Isabel Luberza. Muchas de sus acusaciones contra los abogados José A. Cangiano y Alfredo Mora rebasan la conducta tolerable de un abogado durante las incidencias de un litigio.

El querellado en distintos lugares y ante diferentes personas la emprendió contra estos abogados, principalmente

haciéndoles imputaciones, incluso de naturaleza criminal, con el ánimo prevenido de echar sombras sobre la integridad y la honradez. Todavía más, esta conducta no sólo se circunscribió a los abogados aludidos sino, además, a otras personas tales como el Lcdo. Pedro Luis Ruiz y el ex Juez Superior Carlos D. Bonaparte y la licenciada Orsini Zayas, entre otros. Véanse: *Exhibit* II, pág. 99; *Exhibit* XIV, págs. 603 y 628; *Exhibit* I, págs. 1–9; T.E., págs. 70–75 y 101–113. Ninguno de éstos, a pesar de haber sido investigados por distintos organismos cuyos informes han sido considerados por este Tribunal, fueron encontrados incursos en conducta reprobable o antiética. La conducta del licenciado Clavell Ruiz vulnera la letra y el espíritu de los citados Cánones 9 y 29 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Véanse: *In re Vargas Soto*, supra; *In re Roldán González*, supra.

## D. *Cuarto cargo*

Respecto a este cargo, en la medida que imputa al querellado el haber recurrido a distintos foros "a radicar querellas y/o solicitar y promover investigaciones inmeritorias", a nuestro juicio está comprendido en el anterior y, por ende, le es de aplicación lo allí expuesto. De las determinaciones del Comisionado Especial se desprende que gran parte de los documentos que el querellado utilizó para esos fines, al menos en las vistas senatoriales, estaban relacionados con el caso que se ventilaba en el Tribunal Superior. Ello violenta el mencionado Canon 14, el cual impone el deber al abogado de no facilitar o promover publicidad sobre pleitos pendientes o futuros.[5] La gestión del licenciado Clavell tuvo el efecto de llevar fuera del recinto judicial la discusión de aspectos relacionados con el

---

[5] Entendemos que, distinto a lo que sostiene el Procurador General, el canon aplicable es el 14 y no el 13 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, puesto que los pleitos pendientes no eran de naturaleza criminal.

caso, no sólo al Senado de Puerto Rico sino, además, a la prensa del país. Véase *Exhibit* VI, págs. 449–450.

## E. *Quinto cargo*

En lo que concierne al último cargo, surge de la prueba recibida por el Comisionado Especial una clara transgresión del Canon 24 del Código de Ética Profesional, *supra.*

 Ciertamente el cobro de un cincuenta por ciento (50%) en honorarios contingentes excede los honorarios que acostumbradamente cobran los abogados en Puerto Rico en casos similares al de autos. Un cincuenta por ciento (50%) en honorarios hiere el sentido de lo justo y da a la profesión de abogado visos de negocio, más que de instrumento integrante en la administración de la justicia, como propone este canon. *In re Díaz Lamoutte*, supra.

## *Conclusión*

 En fin, la conducta observada por el querellado en los procedimientos ante el tribunal de instancia, avalada por su proceder irrespetuoso y contumaz durante el proceso de conducta profesional ventilado en su contra ante el Comisionado Especial,(7) denota un comportamiento distanciado de lo que es propio esperar de un abogado en el ejercicio de su profesión y en sus ejecutorias como ciudadano. El proceder del licenciado Clavell señala "una desviación de las normas de conducta profesional que debe observar puntillosamente todo el que tiene el privilegio de

---

(7) En el transcurso de las vistas presididas por el Comisionado Especial el querellado hizo serias acusaciones contra la honorabilidad e integridad de este Tribunal cuando lanzó graves imputaciones a uno de sus Jueces Asociados. Así se expresó el querellado sobre el particular: "Aquí, en este caso V.H., se va a desfilar prueba de que hay un Juez del Tribunal Supremo que vive dentro de los, premises, dentro de las colindancias … del Lic. Cangiano. Vive allí y allí se celebran bachatas y *allí se deciden los casos de este Tribunal.*" (Énfasis suplido.) T.E. de la Vista de 1ro de mayo de 1985, pág. 110. Atacó, además, la pureza de estos procedimientos y la objetividad del Comisionado Especial. También se reafirmó en sus acusaciones contra el licenciado Cangiano, jueces y otros abogados. Véase T.E. de 1ro de mayo de 1985, págs. 101–113.

ejercer la noble profesión de abogado". *In re Roldán Figueroa*, 106 D.P.R. 4 (1977).

En vista de que anteriormente habíamos suspendido indefinidamente al abogado (opinión *Per Curiam* de 29 de septiembre de 1977, *In re Clavell Ruiz*, 106 D.P.R. 257 (1977)), y luego reinstalado, y considerando la magnitud de las violaciones éticas incurridas en esta ocasión (véanse: *In re Feliciano Ruiz, supra; In re Vargas Soto*, supra), se ordena la suspensión indefinida del querellado José A. Clavell Ruiz del ejercicio de la profesión de abogado y notario.

*Se dictará la correspondiente sentencia.*

Los Jueces Asociados Señores Negrón García y Fuster Berlingeri no intervinieron.