211 So.2d 169 (1968)
THE FLORIDA BAR, Complainant,
v.
Howard CURRY, Respondent.
No. 36289.
Supreme Court of Florida.
May 15, 1968.
Rehearing Denied June 28, 1968.
Lyle D. Holcomb, Jr. and Earl D. Waldin, Jr., Miami, for complainant.
*170 Sinclair, Barfield & Louis, Paul A. Louis, Fay L. Becker and Bertha Claire Lee, Miami, for respondent.
ADAMS, Justice.
We have for review a recommendation of The Florida Bar asking a six months suspension be entered against one Howard Curry, an attorney.
This proceeding arose by the Grievance Committee finding probable cause that Howard Curry had violated Canon of Ethics #27, 32 F.S.A. in that he wrongfully solicited legal business. Hearings were held which revealed that Curry was an attorney and an accountant. In the latter capacity he had over a period of years made numerous income tax returns for clients. The crux of this matter occurred when Curry mailed to some 800 of these people for whom he had made income tax returns the following letter:
"Dear Client:
"There are several things I would like to talk to you about and I do not have the time to cover all the subjects while you are on your annual brief visit to the office. Certain problems have arisen over the years in which I have carefully explained to the particular client the solution to these problems but it is not possible for me to talk to all of you even though you may have the same problems, because of the time element, so I take this means as a substitute for a personal visit.

"TAXES
"As you must have read, Internal Revenue is quickly bringing automation into its procedures. This means that you are now a Number in a Computing Machine  That your return is checked as to the average deductions and possibly thrown out by the machine when they exceed the average. You might very well have incurred debts to an extent where your interest deduction was pro-rationally high for your income, or you might have had sickness in the family which might have increased your medical deductions above the average, or you might be subject to a sample audit in which your return is plucked from a large mass of returns and is automatically audited. Internal Revenue will spend the next few years trying to adjust the machines to reflect particular problems that they wish to investigate. For instance this year the emphasis is on dependants. Last year the machine was set so that it would kick out any return of a single person who listed a dependent. The previous year the emphasis was on travel expenses. We don't know what next year will bring, but as the years go on the possibility of an audit of your return increases. Although the percentage of returns I prepare which are audited are less than 3% of my gross business, those 3% taxpayers are unhappy and feel discriminated against or even that my services were to blame. No one knows exactly why a return is audited but the signature of a well known professional diminishes the probability of an audit.
"For many years I pursued the policy of helping the taxpayer assemble their records and in some cases making no charge for representing them. This has now become impossible. I do not want my clients to appear before Internal Revenue alone because whatever the agent might say, or determine, they have no knowledge whether he is right or wrong, (and he is often wrong), so I have offered to represent the taxpayers who are audited for a token fee and make every effort to keep the taxpayer away from the agent, for I am well known and respected in the local office and can usually do a better job of representing the taxpayer than the taxpayer could himself do. This means the Agent's level only. If it is necessary to appeal his decision and go to a higher level then of course this means additional expense but which you and I will agree on beforehand. Therefore I have adopted the following policy. If your return is audited you are to contact me immediately, I will then help you assemble whatever records are called for. There is *171 no charge for this service. If you wish me to represent you at the hearing I will handle the entire audit. For this service there is a small fee. Remember, the fee you pay me each year is for the preparation of the return only and does not include a defense and representation of the return. I hope that this clears the air and that you will now understand my policy as to the tax return audits.

"LAW
"It is not unusual for a client to come into my office and state that they have bought or sold property, adopted a child or obtained a divorce or had an estate plan drawn up or made a Will, all handled by another attorney, and in a lot of cases not handled to the client's satisfaction. All of this work I have been doing for 15 years and the client expresses surprise upon finding out that this is a Law Office. Being and (sic) Accountant and an Attorney at Law the services of these two professions are contained in one office and are a necessary ingredient in the settlement or preparation of almost any legal problem you may have. In the field of Estate planning, taxes is a paramount issue, so the lawyer who prepares it must have a thorough knowledge of taxes, accounting and law. This holds true in divorces. It is every man's or woman's desire to come out of a property settlement or a divorce with untaxed income or a minimum of taxes. This again requires the service of the two professions.
"Many of my clients have sideline businesses which they must co-ordinate with their other income. In buying and selling property there always arises the question of the proper method of a sale or purchase to minimize the tax impact. Regardless of what you do, or intend to do, there is both the legal and tax problem involved and co-ordination of both is imperative. It is a sad thing to hear a client who's been walking into these Law Offices for 15 years to say that they did not know that I handled matters other than tax problems. We always have and always will be available for all Legal, Tax and Accounting problems to our clients, a lot of times at no fee, simply because you are a client and have preference over those who are not clients.
"Briefly then, we want you to know once and for all that this is a Law Office and handles matters involving legal problems. Of course we are tax specialists but a major part of our business throughout the year is devoted to the general practice of law such as estate planning, real estate, divorces, property settlements, business organizations, wills, etc.
"I hope I have clearly stated our position here and that you understand that we are ready to handle any of your Tax, Law and Accounting work. That you are a preferred client and my office and telephone is at your disposal throughout the year.
"I do hope I see you again this season and that you can see your way clear to making it early so that we may have more time to go over your problem, whatever it may be and chat with you at length about it.
 "Best wishes,
 /s/ Howard Curry"
 (Emphasis his)
After hearing before the Referee, the latter was found guilty and recommended a private reprimand.
On review as provided by rule, the Board of Governors of The Florida Bar approved the Referee's finding of guilt but found that Curry should be not only reprimanded but should be suspended for six months and pay the costs.
The matter is now before us for review and Mr. Curry has assigned five points which we will treat.
The first point is: "Does the record reflect that respondent solicited professional services `not warranted by personal relations'?" Inasmuch as the recipients of the letter were people who had theretofore *172 availed themselves of Mr. Curry's services on tax matters, it may be said that the invitation was warranted on personal relations and therefore not in derogation of the rule. We have therefore considered the matter in the light of Mr. Curry's testimony wherein he testified he had spent a great deal of time in preparing the letter. We are led to the conclusion that the content of the letter in the argumentative form carried a message that can leave no doubt that it solicited any and all kinds of legal work. When measured by the judgment of disinterested members of the Bar we conclude there can be little doubt that Mr. Curry was sending a message that his brethren of the Bar had been giving some poor and costly services and he could do a better job. His oral testimony likewise added to the construction accepted by the Bar.
The second point is: "Is a judgment of suspension for six months entered by the Board of Governors, unconscionably harsh and contrary to the law and to the evidence, where the referee and the bar counsel recommended a private reprimand, and the referee found: (i) letter went to those with whom he had previously had contact as a lawyer; and (ii) there was no evidence that respondent had reason to believe he had been supplanted by another attorney; and (iii) there was no intent to take business away from another attorney or to profit by the consultations?" Meting out punishment to an offender is one of the most delicate and difficult duties in all our jurisprudence. Hardly any two will agree on the same punishment. What is punishment to one offender is of no consequence to another. In this instance the Referee was of the opinion that a finding of guilty and a reprimand was adequate. The Board of Governors thought somewhat differently and added the six months suspension. We are not constrained to overturn the finding of the Board of Governors.
The third point is: "Where pursuant to reapportionment of Board of Governors of Florida Bar (in the matter of The Florida Bar, Fla., 175 So.2d 530) the Board of Governors appointed additional members to fill said newly created offices, instead of election by the active members of The Florida Bar, was the enlarged Board of Governors unconstitutional and unlawfully constituted and any action taken thereby void?" We have considered this matter and conclude that the Board was duly and legally constituted and Mr. Curry's contention is without merit on that phase.
The fourth point is: "Is the judgment of suspension entered in this action invalid where said judgment does not reflect whether the procedural steps for review set forth in Rule 11.06(9) (c) (1) of the Integration Rule of The Florida Bar had been followed?" The record reveals that all steps were taken in this matter. In no way has Mr. Curry been deprived of notice and a hearing, hence this point has no merit.
The fifth point is: "Where pursuant to Rule 11.04(2) (3) of the Integration Rules, respondent was required to produce records and testify against himself before the Grievance Committee and before the Referee (over his objection) respondent was granted immunity under the Fifth and Fourteenth Amendments to the United States Constitution and Section 12, Declaration of Rights, Florida Constitution against any further disciplinary procedures." In this proceeding we have no statutory immunity where he is called to testify. Mr. Curry relies upon immunity under the Fifth and Fourteenth Amendments to the Constitution of the United States and Section 12 of the Declaration of Rights of the Florida Constitution. At no time during this proceeding did Mr. Curry refuse to testify or otherwise claim his constitutional rights against self-incrimination.
Accordingly, it is the order and judgment of this Court that the respondent Howard Curry, a member of The Florida Bar, be and he is hereby suspended from the practice of law in this State for a period of six months from the effective date of this order. Costs of these proceedings in the amount of $157.00 are hereby taxed against *173 the respondent and the same are hereby ordered to be paid within thirty days from the effective date of this order. In the event said costs are not paid within said time, execution shall issue therefor.
It is so ordered.
CALDWELL, C.J., and THOMAS, ROBERTS, DREW and THORNAL, JJ., concur.
ERVIN, J., dissents with Opinion.
ERVIN, Justice (dissenting).
I would approve Referee's recommendation.