# 2001 DTA 130

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL V DE PONCE Y AIBONITO**

ILIA FIGUEROA MORALES, RAMON GARCIA ORTIZ
Demandantes-Peticionarios

v.

JESUS PEREZ, MD, FRANCISCO QUINTANA, MD, VICENTE SANCHEZ, MD, MARCOS GONZALEZ, MD, JOSE HERNANDEZ, MD, ZACARIAS MATEO, MD, JESUS MARTINO, MD, FULANO AVILES, MD, ZUTANO DIAZ, MD, FULGENCIA PEREZ, MD, SOCIEDAD OBSTETRICA DEL SUR, JUDITH IRIZARRY R.N., JOHN DOE, D., RICHARD ROE, MD, TOMAS ZOE, MD, JANE DOE, R.N., JANICE ROE, R.N., ABC INSURANCE CO., DER INSURANCE CO., GAI INSURANCE CO.
Demandados-Recurridos

Núm. KLCE-00-01399

San Juan, Puerto Rico, a 13 de marzo de 2001

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Ortiz Carrión y la Juez Pabón Charneco

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

Los peticionarios, Ilia Figueroa Morales y Ramón García Ortiz, solicitan la revisión de una resolución emitida el 19 de octubre de 2000 por el Tribunal de Primera Instancia, Sala Superior de Ponce, en el procedimiento sobre daños y perjuicios por mala práctica de la medicina instado por ellos contra la parte recurrida, Dr. Marcos González, la Sociedad Obstétrico-Ginecológica del Sur ("*la Sociedad Obstétrico Ginecológica*"), el Estado Libre Asociado de Puerto Rico y las demás partes de epígrafe.

Mediante el dictamen en cuestión, el Tribunal de Primera Instancia ordenó la descalificación de la Lcda. Evelyn Quiñones Carrasquillo como abogada de los peticionarios, por haber prestado servicios como sicóloga a los peticionarios con relación a la materia objeto de la demanda, lo que provocó que fuese citada como testigo para una deposición por la parte recurrida. El Tribunal también descalificó al Lcdo. Harry Segarra Arroyo, esposo de la Lcda. Quiñones Carrasquillo, y al Lcdo. José S. Dapena Thompson, supuesto socio de los anteriores.

Modificamos el dictamen del foro recurrido en cuanto al Lcdo. Dapena Thompson y devolvemos el asunto para la celebración de una vista en cuanto a la relación de dicho letrado con los otros abogados descalificados.

### II

Según surge del recurso, los peticionarios son residentes de Ponce, donde viven juntos. A la fecha de los hechos, habían concebido una niña que murió el mismo día de su nacimiento, 12 de julio de 1996, en el Hospital

Regional de Ponce, luego de que la peticionaria Ilia Figueroa Morales acudiera a dicha institución a recibir asistencia médica para su parto. La niña nació por una operación cesárea practicada de emergencia, luego de que la peticionaria permaneciera por más de cuatro o cinco horas sin ser pasada a la sala de parto.

A la fecha de los hechos, el Hospital Regional de Ponce era operado por el Estado Libre Asociado. Los médicos de la Sociedad Obstétrico-Ginecológica, incluyendo aparentemente al Dr. González, prestaban servicios en la Sala de Parto de dicho hospital. Alegadamente, la causa del fallecimiento de la hija de los peticionarios lo fue la impericia de dichos médicos y del personal del Hospital que atendió a la peticionaria.

Luego de la muerte de la bebé, la peticionaria recibió tratamiento y orientación sicológica de parte de la Lcda. Evelyn Quiñones Carrasquillo, quien cuenta con un grado en sicología y ejerce dicha profesión, además de la profesión legal. La Lcda. Quiñones Carrasquillo mantiene sus oficinas de abogada con su esposo, el Lcdo. Harry Segarra Arroyo. Los esposos también se han representado comercialmente, junto al Lcdo. José S. Dapena Thompson, como "*Quiñones, Dapena & Segarra Law Firm*".

La peticionaria visitó a la Lcda. Quiñones Carrasquillo los días 14 de octubre de 1996, 12 de noviembre de 1996, 5 de febrero de 1996 y en marzo de 1997.

El 11 de julio de 1997, los peticionarios instaron la presente demanda contra el Dr. Marcos González, la Sociedad Obstétrico-Ginecológica del Sur, el Estado Libre Asociado de Puerto Rico y las demás partes de epígrafe, reclamando por los daños y perjuicios sufridos por la alegada negligencia de las partes demandadas. Comparecieron representados a través de la Lcda. Quiñones Carrasquillo.

Las partes demandadas contestaron la demanda, negando las alegaciones. El Dr. González, por su parte, presentó una demanda contra coparte contra el E.L.A., la cual fue contestada por dicha parte, quien presentó una reconvención contra el Dr. González.

La demanda fue enmendada posteriormente para incluir partes adicionales.

Durante el proceso de descubrimiento de prueba, varios de los codemandados sometieron interrogatorios a la peticionaria donde se solicitaba de ésta que indicara los profesionales de la salud que la habían atendido. En sus contestaciones, la peticionaria se limitó a indicar que había consultado a un ginecólogo. No indicó que había recibido psicoterapia con la Lcda. Quiñones Carrasquillo.

El 14 de enero de 2000, se le tomó una deposición a la peticionaria, en la que, a preguntas de la representación legal de la parte recurrida, ésta informó que había sido atendida por la Lcda. Quiñones Carrasquillo, actuando como sicóloga.

Así las cosas, los recurridos informaron su interés en deponer a la Lcda. Quiñones Carrasquillo. Poco después, el Dr. González presentó una moción, solicitando la descalificación de la Lcda. Quiñones Carrasquillo como abogada en el pleito, bajo el Canon 22 de Etica Profesional, por el fundamento de que dicha parte se proponía utilizarla como testigo en el pleito. El recurrido solicitó, además, la descalificación de los Lcdos. Segarra Arroyo y Dapena Thompson por ser miembros del mismo bufete.

La parte peticionaria se opuso a dicha solicitud, argumentando esencialmente que la parte demandada no había demostrado justa causa para la utilización de la Lcda. Quiñones Carrasquillo como testigo en el pleito. El Lcdo. Dapena Thompson también planteó que él no estaba asociado a la Lcda. Quiñones Carrasquillo o al esposo de ésta.

El 19 de octubre de 2000, luego de otros incidentes, incluyendo una vista de argumentación, pero sin que se hubiese llegado a tomar la deposición solicitada a la Lcda. Quiñones Carrasquillo, ██ el Tribunal de Primera Instancia emitió la resolución recurrida, ordenando la descalificación de todos los abogados de la parte

peticionaria.

En su resolución, el Tribunal consideró que los recurridos habían demostrado la necesidad de deponer y traer como testigo a la Lcda. Quiñones Carrasquillo, por lo que procedía su descalificación. Expresó:

*"En el caso de autos, la [representación del recurrido] manifestó su intención de tomar una deposición, más aun se llegó a calendarizar la toma de la misma a la Lcda. Quiñones debido a que ésta brindó tratamiento sicológico a la demandante. Así mismo, ha señalado que tiene interés en sentar a ésta a testificar en la vista en su fondo. Basado en estos hechos es que solicita la descalificación del bufete que representa a la parte demandante en el presente litigio, alegando la existencia de un conflicto ético.*

*Adoptando el enfoque pragmático sugerido por el Tribunal Supremo para analizar este tipo de controversia, nos parece que la intervención de la Lcda. Quiñones como sicoterapista de la Sra. Figueroa impide que continúe con la representación legal de la parte demandante ostentada hasta este momento, pues conforme al derecho que le asiste a la parte contraria de descubrir prueba pertinente respecto a las alegaciones de la demanda, es forzosa la descalificación. Sobre este particular, los codemandados nos demuestran en la afirmativa la necesidad de deponer y de traer como testigo a la Dra. Quiñones por el conocimiento y por la información que posee respecto a las alegaciones de daños expuestas en la demanda."*

En cuanto a los Lcdos. Segarra Arroyo y Dapena Thompson, el Tribunal concluyó que existía la posibilidad de un conflicto ético, por lo que los mismos también debían ser descalificados.

El Tribunal concedió a la parte demandante cuarenta y cinco (45) días para que anunciara una nueva representación legal.

Insatisfecha, la parte peticionaria acudió a este Tribunal.

### III

En su recurso, la parte peticionaria argumenta que erró el Tribunal de Primera Instancia al descalificar a sus abogados. En particular, señala que no procedía la descalificación de la Lcda. Quiñones Carrasquillo sin que se le tomará una deposición para determinar si existía justa causa para que la parte codemandada la requiriera que testificara durante el pleito. En cuanto a los Lcdos. Segarra Arroyo y Dapena Thompson, insiste que no tienen organizado un bufete junto con la Lcda. Quiñones Carrasquillo, por lo que tampoco procedía su descalificación.

Como es bien sabido, el Tribunal de Primera Instancia tiene la facultad de ordenar la descalificación de los abogados que participan en un caso, bien para prevenir violaciones a los Cánones de Etica Profesional o para evitar actos disruptivos de los procedimientos. *Meléndez Vega v. Caribbean International News*, 151 D.P.R. __ (2000), **2000 J.T.S. 108**, a la pág. 1,400; *K-Mart Corp. v. Walgreens of P.R., Inc.,* 121 D.P.R. 633, 637 (1988).

Esta facultad es inherente al poder del Tribunal para gobernar los procedimientos ante sí. El ejercicio de la misma no tiene la naturaleza de una medida disciplinaria, poder que está reservado al Tribunal Supremo de Puerto Rico, sino que constituye una determinación procesal. Véanse, *Meléndez Vega v. Caribbean International News*, **2000 J.T.S. 108,** a la pág. 1,400; *Liquilux Gas Corp. v. Berríos Zaragoza*, 138 D.P.R. 850, 864 (1995); *Fed. Pesc. Playa Picúas v. U.S. Inds., Inc.,* 135 D.P.R. 303, 317 n. 25 (1994); *K-Mart Corp. v. Walgreens of P.R., Inc.*, 121 D.P.R. __, a la pág. 637.

La descalificación puede ser ordenada a solicitud de parte o por el Tribunal, actuando *motu proprio*. En este último caso, no siempre es indispensable la celebración de una vista sino que el Tribunal puede considerar la conducta de la parte en el procedimiento ante sí. *Meléndez Vega v. Caribbean International News*, **2000 J.T.S. 108,** a la pág. 1,400.

Cuando la descalificación es solicitada por la parte contraria, debe considerarse si quien solicita este remedio tiene legitimación para hacerlo, la gravedad del conflicto, la complejidad del derecho o de los hechos pertinentes a la controversia y el *"expertise"* de los abogados involucrados, la etapa del procedimiento en que surja la controversia y su posible efecto en cuanto a la resolución justa, rápida y económica del caso, y el propósito detrás de la descalificación, esto es, si la solicitud está siendo utilizada para dilatar los procedimientos. *Otaño Cuevas v. Vélez Santiago*, 141 D.P.R. __ (1996), **96 J.T.S. 142**, a la pág. 280; *Liquilux Gas Corp. v. Berríos Zaragoza*, 138 D.P.R. __, a las págs. 864-865.

Según indicado, entre otros fundamentos, la descalificación puede ser ordenada para evitar conflictos de naturaleza ética. *Meléndez Vega v. Caribbean International News*, **2000 J.T.S. 108,** a la pág. 1,400; *Liquilux Gas Corp. v. Berríos Zaragoza*, 138 D.P.R. __, a la pág. 864. La evaluación de este tipo de situaciones, según se conoce, está regida por los Cánones del Código de Etica Profesional, 4 L.P.R.A., Ap. IX.

En la situación de autos, el Tribunal entendió que la Lcda. Quiñones Carrasquillo debía ser descalificada en atención a lo dispuesto por el Canon 22 de dicho Código, 4 L.P.R.A. Ap. IX, C. 22, el cual dispone:

*"Excepto cuando sea esencial para los fines de la justicia, el abogado debe evitar testificar en beneficio o en apoyo de su cliente. Cuando un abogado es testigo de su cliente, excepto en materias meramente formales, tales como la comprobación o custodia de un documento y otros extremos semejantes, debe dejar la dirección del caso a otro abogado.*

*Igualmente, un abogado debe renunciar la representación de su cliente cuando se entera de que el propio abogado, un socio suyo o un abogado de su firma puede ser llamado a declarar en contra de su cliente."*

El Tribunal Supremo ha interpretado que, conforme a dicho precepto, un abogado no puede participar en litigios en los que pudiera ser llamado a testificar sobre los hechos. Véanse, *In re: Cardona Alvarez*, 133 D.P.R. 588, 593 (1993); *In re: Colón Ramery*, 133 D.P.R. 555, 568 (1993).

La parte peticionaria se queja de que en el presente caso el Tribunal ordenó la descalificación de la Lcda. Quiñones Carrasquillo, sin que se hubiese determinado si el testimonio de dicha letrada era realmente indispensable. Sugiere que la información que dicha testigo podría aportar a la adjudicación del caso es poca y que la pretendida utilización de la Lcda. Quiñones Carrasquillo como testigo por la parte recurrida constituye más bien una táctica para privar a la peticionaria de su abogada.

La norma adoptada por el Tribunal Supremo de Puerto Rico es que los abogados de las partes no están inmunes a ser llamados a deponer cuando ello resultare necesario para el esclarecimiento de un caso. *Ades v. Zalman*, 115 D.P.R. 514, 524 (1984).

Ahora bien, es necesario que la parte proponente establezca que existe una justa causa para tomar la deposición al abogado.

Según se conoce, existe un interés en garantizar a cada parte el derecho a comparecer representada por un abogado de su preferencia. *Otaño Cuevas v. Vélez Santiago*, **96 J.T.S. 142,** a la pág. 280; *Sánchez Acevedo v. E. L.A.*, 125 D.P.R. 432, 438 (1990).

Para salvaguardar dicho interés, cuando se ha solicitado realizar descubrimiento de prueba sobre la persona de uno de los abogados que representa a una parte en un litigio, el tribunal viene obligado a determinar si la información que se busca descubrir a través del abogado es susceptible de ser obtenida de otras personas o medios menos onerosos y complejos, en cuyo caso deben agotarse dichas alternativas previo a ordenar la deposición. *Ades v. Zalman*, 115 D.P.R. __, a la pág. 524.

En el caso de autos, el Tribunal determinó que la solicitud de la parte recurrida de deponer a la Lcda. Quiñones Carrasquillo era razonable, por cuanto dicha letrada había brindado atención sicológica a la peticionaria y, por lo tanto, estaba en posición de conocer los detalles sobre los daños reclamados por ésta. Dicha apreciación parece razonable, particularmente en atención a los amplios criterios sobre pertinencia establecidos por nuestro ordenamiento en materia de descubrimiento de prueba. Véase, *Rodríguez, Peña Clós y la Comisión Especial sobre el Cerro Maravilla*, 148 D.P.R. __ (1999), **99 J.T.S. 110**, a la pág. 1,283; véase, además, *Berríos Heredia v. González*, 151 D.P.R. __ (2000), **2000 J.T.S. 102**, a la pág. 1,300.

Ahora bien, la deposición de la Lcda. Quiñones Carrasquillo no se ha llevado a cabo porque la Lcda. Quiñones Carrasquillo ha declinado comparecer, por lo que resulta imposible precisar, en esta etapa, el alcance de su conocimiento y determinar si será necesario que dicha parte testifique en el juicio del caso.

No obstante, opinamos que la descalificación de dicha abogada era requerida, en cualquier caso, en atención a lo dispuesto por el Canon 37 del Código de Etica Profesional, 4 L.P.R.A. Ap. IX, C. 37. Dicho Canon dispone, en lo pertinente:

*"La participación del abogado en negocios o actividades de venta de bienes, agencias de cobro, fianzas u otros servicios comerciales propios o pertenecientes a otras personas no es una actividad propia de la buena práctica de la profesión si tal negocio o actividad tiene el fin directo o indirecto de proporcionarle trabajo profesional lucrativo que de otra forma el bufete no hubiese obtenido."*

Este precepto impide que un abogado combine sus servicios profesionales como abogado con otras actividades que puedan tener el fin *"directo o indirecto de proporcionarle trabajo profesional lucrativo que de otra forma el bufete no hubiese obtenido."* Véase, *In re: Ramírez Ferrer*, 147 D.P.R. __ (1999), **99 J.T.S. 41**, a la pág: 788; *In re: Belén Trujillo*, 126 D.P.R. 743, 756 (1990); *In re: Clavell Ruiz*, 108 D.P.R. 259, 261 (1978); *In re: Clavell Ruiz*, 106 D.P.R. 257, 273-275 (1977); *In re: Roldán Figueroa*, 106 D.P.R. 4, 10-13 (1977).

Este tipo de situaciones conlleva un posible choque entre los intereses del cliente y el del abogado. En este sentido, la conducta en cuestión también resulta contraria al Canon 21, 4 L.P.R.A. Ap. IX, C. 21, el cual dispone:

*"El abogado tiene para con su cliente un deber de lealtad completa. Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. Ningún abogado debe aceptar una representación legal cuando su juicio profesional pueda ser afectado por sus intereses personales."*

Según ha aclarado el Tribunal Supremo de Puerto Rico, el precepto citado le impone a todo abogado el deber de evitar tres situaciones básicas, a saber: (1) aceptar la representación legal cuando a su juicio la misma pueda verse afectada por sus expectativas o intereses personales; (2) aceptar la representación legal simultánea de dos clientes distintos con intereses contrapuestos; (3) aceptar la representación de un cliente en asuntos que puedan afectar cualquier interés de un cliente anterior. *Otaño Cuevas* v. *Vélez Santiago*, **96 J.T.S. 146**, a la pág. 279; *In re: Toro Cubergé*, 140 D.P.R. 523, 529-530 (1996).

En particular, en el primer tipo de situación se persigue evitar que un abogado deje de realizar determinada acción de posible beneficio para su cliente porque la misma frustre algún interés propio que el abogado también quiera promover o defender. *In re: Toro Cubergé*, 140 D.P.R. __, a la pág. 530; *Liquilux Gas Corp. v. Berríos Zaragoza*, 138 D.P.R. __, a la pág. 858; *In re: Belén Trujillo*, 126 D.P.R. __, a la pág. 753.

Está claro, en este sentido, que la obligación de representar al cliente con lealtad impuesta al abogado por el citado Canon 21 le exige, entre otras cosas, ejercer un criterio profesional independiente y desligado de sus

propios intereses. *Otaño Cuevas v. Vélez Santiago,* **96 J.T.S. 142,** a la pág. 279; *Liquilux Gas Corp. v. Berríos Zaragoza,* 138 D.P.R. __, a la pág. 858.

El Canon 38, por su parte, impone al abogado la obligación de *"...esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia".* 4 L.P.R.A. Ap. IX, C. 38.

Consistente con este precepto, el Tribunal Supremo de Puerto Rico ha expresado que en caso de dudas sobre un posible conflicto de intereses o donde el conflicto de intereses sea sólo potencial, el abogado está obligado a renunciar a la representación legal del cliente afectado. *In re: Toro Cubergé,* 140 D.P.R. __, a las págs. 532-533; *Liquilux Gas Corp. v. Berríos Zaragoza,* 138 D.P.R. __, a las págs. 858 y 864; *Fed. Pesc. Playa Picúas v. U.S. Inds., Inc.,* 135 D.P.R. __, a las págs. 318-319; *In re: Carreras Rovira y Suárez Zayas,* 115 D.P.R. 778, 791-792 (1984).

El Tribunal Supremo también ha interpretado que un abogado no debe ejercer funciones incompatibles entre sí, entendiéndose que el ejercicio de funciones incompatibles implica actuaciones incompatibles con la situación y circunstancias del caso, de manera que se afecte la independencia profesional del abogado frente a otro interés público o privado. Véase, *In re: Toro Cubergé,* 140 D.P.R. __, a la pág. 531; *García O'neill v. Cruz,* 126 D.P.R. 518, 524-527 (1990); *In re: Carreras Rovira y Suárez Zayas,* 115 D.P.R. __, a las págs. 785-788; *In re: Rojas Lugo,* 114 D.P.R. 687, 690-691 (1983); véase, además, *Lcdo. Michael Corona Muñoz,* 141 D.P.R. __ (1996), **96 J.T.S. 125,** a la pág. 151.

La regla es que, cuando existe el potencial de un conflicto de esta naturaleza, el abogado viene obligado a abstenerse de intervenir, independientemente de que los clientes afectados así lo autoricen. *Otaño Cuevas v. Vélez Santiago,* **96 J.T.S. 142,** a la pág. 280; P.R. *Fuels, Inc. v. Empire Gas Co., Inc.,* 133 D.P.R. 112, 118 (1993); *In re: Carreras Rovira y Suárez Zayas,* 115 D.P.R. __, a la pág. 793.

En la situación de autos, entendemos que la circunstancia de que la Lcda. Quiñones Carrasquillo hubiera desempeñado dos funciones profesionales distintas, actuando primero como sicóloga y luego como abogada de la peticionaria, plantea un conflicto potencial con las disposiciones citadas que requiere su descalificación en el presente caso.

Una norma similar se observa en la mayoría de las jurisdicciones de los Estados Unidos, con relación a la intervención, en diferentes capacidades, de los abogados en asuntos de sus clientes. Véanse, las Reglas 1.7 (Conflict of Interest: General Rule), 5.7 (Responsibilities Regarding Law-Related Services) y 7.3 (Direct Contact with Prospective Clients) de las Reglas Modelo de Conducta Profesional de la A.B.A.; *ABA/BNA Lawyers Manual on Professional Conduct, Washington, American Bar Association/The Bureau of National Affairs, Inc.,* 1990, a las págs. 51:401, 51:405, 81:2001 y 81:2009; *Annotated Model Rules of Professional Conduct, United States, American Bar Association Center for Professional Responsibility,* 1999, a las págs. 91-101, 471-476, 517 y 528; ABA Informal Opinion 83-1497, March 1, 1983, *Dual Practice of Law and Medicine;* ABA Informal Opinion 1482, April 8, 1982, *Business Dealings with Clients and Operation of Law-Related Business from a Law Office;* véase, además, Philadelphia Ethics Opinion 87-22 (10/8/87), *Partnerships, Advertising, Trade Name;* Ohio State Bar Ethics Opinion 86-5 (5/29/86), *Banks; Cincinnati Bar Assn. v. White,* 684 N.E.2d 29, 30-31 (Ohio 1997); *Matter of Galbasini,* 786 P.2d 971, 972-976 (Ariz. 1990); *In re: Cornelius,* 520 P.2d 76, 84-86 (Alaska 1974), abandonado en cuanto a otro aspecto por *Disciplinary Matter Involving Buckalew,* 731 P.2d 48 (Alaska 1986); *The Florida Bar v. Curry,* 211 So.2d 169, 170-172 (Fla. 1968), cert. den., 393 U.S. 981 (1968); Annot., *Modern Status of Law Regarding Solicitation of Business By or For Attorney,* 5 A.L.R. 4th 866 (1981).

La peticionaria ha sugerido que la actuación de la Lcda. Quiñones Carrasquillo como su sicóloga no resulta conflictiva con el desempeño de dicha letrada como su abogada, si ésta no testifica, puesto que ambas funciones

le brindan apoyo, en diferentes dimensiones. El conflicto en estos casos, según hemos visto, es, sin embargo, que el juicio profesional del abogado se vea comprometido por el interés económico que pueda representar el haber rendido servicios remunerados de otro tipo. En estas circunstancias, concluimos que el Tribunal no erró al ordenar la descalificación de la Lcda. Quiñones Carrasquillo.

Tampoco erró el foro recurrido al ordenar la descalificación del Lcdo. Segarra Arroyo, esposo de la Lcda. Quiñones Carrasquillo. Presumiblemente, dicho letrado se beneficia, de forma directa o indirecta, de las gestiones profesionales de su esposa como sicóloga, lo que similarmente afecta su deber de lealtad con su cliente.

Según expuesto anteriormente, el Canon 37 del Código de Etica Profesional prohíbe la participación del abogado en actividades comerciales *"...si tal negocio o actividad tiene el fin directo o indirecto de proporcionarle trabajo profesional lucrativo que de otra forma el bufete no hubiese obtenido"*. Además, el Canon 34 de dicho Código, 4 L.P.R.A. Ap. IX, C. 34, prohíbe el que un abogado *"...actuando directamente o a través de intermediarios o agentes, haga gestiones para proporcionarse casos o reclamaciones en que intervenir o para proporcionarlos a otros abogados"*. Véase, el Preámbulo del Código de Etica Profesional, 4 L.P.R.A. Ap. IX, C. 1, Historial; cf., *In re: Colón Ramery*, 138 D.P.R. 793, 800 (1995); *P.R. Fuels, Inc. v. Empire Gas Co., Inc.*, 133 D.P.R. __, a las págs. 119-120.

Ahora bien, el Lcdo. Dapena Thompson ha reclamado que éste no goza de una sociedad con los otros letrados. Del récord no surge la naturaleza económica exacta de la relación entre el Lcdo. Dapena y los esposos Segarra Quiñones. El Tribunal de Primera Instancia no recibió evidencia sobre este particular, sino que descansó en las comunicaciones enviadas por los abogados de la parte peticionaria, en cuyo timbre se representaba que se trataba de un bufete. En otro contexto, el Tribunal Supremo ha permitido que se considere si un abogado está o no lo suficientemente aislado de otros que puedan confrontar un conflicto de naturaleza ética como para permitirle participar en el caso. *P.R. Fuels, Inc. v. Empire Gas Co., Inc.*, 133 D.P.R. __, a las págs. 119-125

Consideramos que debe brindarse una oportunidad adecuada al Lcdo. Dapena Thompson para que establezca la ausencia de nexos económicos con los Lcdos. Quiñones Carrasquillo y Segarra Arroyo que imposibiliten su participación en el presente caso. Dadas las representaciones contenidas en las comunicaciones enviadas por los referidos abogados, el peso de la prueba corresponde a dicha parte -que es quien está en posesión de la información pertinente- para establecer la ausencia de conflicto. La parte recurrida tendrá derecho a conducir descubrimiento de prueba en torno a lo anterior, según pueda ser reglamentado por el Tribunal.

Por los fundamentos expresados, se expide el auto y se modifica la resolución recurrida, a los fines de dejar sin efecto la determinación de descalificar al Lcdo. Dapena Thompson en esta etapa, y devolver el asunto al foro de Primera Instancia para una vista sobre dicho particular. Se confirma la descalificación de los Lcdos. Quiñones Carrasquillo y Segarra Arroyo.

Lo pronunció y manda el Tribunal y lo certifica la señora Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General

### ESCOLIO 2001 DTA 130

1. Según se desprende del expediente, la Lcda. Quiñones Carrasquillo notificó a la parte recurrida que no habría de comparecer a la deposición hasta que el Tribunal se pronunciase sobre la solicitud de su descalificación.