*In re* LIC. ENRIQUE VÁZQUEZ BÁEZ, querellado.

*Número:* O-77-477      *Resuelto:* 23 de enero de 1981

*Héctor A. Colón Cruz, Procurador General, Eliadís Orsini Zayas, Procuradora General Auxiliar,* abogados de El Pueblo; *Yamil Galib, Hernán Longoria, Segismundo López Rodríguez* y *Rafael Vázquez Báez,* abogados del querellado.

PER CURIAM: El Procurador General formuló contra el abogado Sr. Enrique Vázquez Báez cuatro cargos de conducta antiética imputándole en esencia:

I. Violación del Canon 8 de Ética Profesional al permitir que en su presencia su cliente en dos casos criminales influyera con un testigo de cargo para que cambiara su declaración;

II. Violación de los Cánones 9 y 38 consistente en:

1. Asisti[r] a los tribunales barbudo, desaliñado y vistiendo camisa sport y en chancletas.

2. Obstruir en repetidas ocasiones el acceso con su carro al área de estacionamiento de los jueces.

3. Asumir una actitud desafiante cuando se le menciona su forma de vestir por el Tribunal.

4. Entrar a las oficinas de los jueces sin solicitar permiso con una taza de café y un cigarrillo en las manos.

5. Sentarse en la mesa destinada a los fiscales mientras se dirigía al Tribunal en sesión, rehusando permanecer de pie por

orden del Tribunal y luego invitando a pelear al juez. Estos hechos ocurrieron el día 8 de octubre de 1974. El Tribunal procedió a dictar sentencia por desacato criminal.

6. Interrumpir los procedimientos judiciales de vista preliminar celebrada el día 5 de septiembre de 1974 ante la Honorable Juez de Distrito Ardelie Ferrer de Rivera quien le impuso Desacato Criminal [*sic*].

7. No comparecer en casos criminales los días 27 de febrero de 1974, 3 de abril de 1974 ante el Tribunal de Distrito por lo cual el Tribunal le impuso cuatro desacatos criminales.

8. Proferir palabras obscenas contra la persona del Honorable Manuel Cruz Soto, Fiscal Auxiliar, porque éste pidió se investigara la conducta profesional del querellado.

9. Invitar a pelear al Honorable Víctor Calderón, Fiscal, mientras se celebraba una vista preliminar en el Tribunal de Distrito de Mayagüez, manifestando que él se había criado en los barrios bajos de Mayagüez y que resolvía sus casos con pelea.

III. Violación de los Cánones 8 y 35 al ocultar de una juez que no estaba firmada ni era firme la sentencia de divorcio de un cliente a quien acompañó frente a la magistrado a casarse con otra mujer.

IV. Violación del Canon 19 al no mantener una cliente informada del curso de una acción civil enterándose ella por iniciativa propia de la desestimación de su demanda.

El Tribunal designó Comisionado Especial al anterior juez superior Sr. Manuel A. Moreda ante quien tuvo el querellado una audiencia plena, y recibida toda la prueba del Procurador General y del querellado, formuló el Comisionado determinaciones de hecho sometidas en su Informe a este Tribunal de 12 septiembre, 1980. El 6 de octubre, 1980 el Procurador General radicó un pliego de comentarios al Informe en que discrepa de las conclusiones respecto al primero y segundo cargos, y "coincid[e] plenamente" con las expresiones del Comisionado al adjudicar los cargos tercero y cuarto.

En su Informe, el Comisionado especial llega a las siguientes conclusiones:

Cargo I. No hubo prueba que le permitiera concluir que en presencia del querellado el acusado Roger Rivera usase presiones indebidas sobre el testigo Frederick Rodríguez Mercado para inducirlo a cambiar su declaración o que el abogado tuviese conocimiento de anteriores gestiones de ese tipo. El citado Roger Rivera fue acusado en dos casos de escalamiento en primer grado en un almacén y una joyería y en ambos era testigo el nombrado Frederick. Al querellado se le designó por el tribunal para que asistiera al acusado en la vista preliminar, mas no lo representó en el juicio. [1] El Comisionado resume así el incidente que dio lugar a este cargo:

Antes de las fechas señaladas para la celebración del juicio criminal, un domingo en la noche, a eso de las 7:00 P.M., el acusado Roger Rivera Velázquez y su abogado, el Lcdo. Enrique Vázquez Báez, fueron a la residencia de Frederick Rodríguez Mercado. Como medio de transportación, usaron el automóvil del querellado, Lcdo. Vázquez Báez.

En la acera, frente a la residencia de Frederick Rodríguez Mercado, en presencia del Lcdo. Enrique Vázquez Báez, Roger Rivera Velázquez, le dijo a Frederick Rodríguez Mercado, que si lo podía acompañar para cambiar la declaración que había prestado ante el Fiscal. Frederick estuvo conforme. Abordó el automóvil del Lcdo. Vázquez Báez y se hicieron gestiones para localizar a un fiscal. Primero trataron de hacer contacto con el Fiscal Víctor Calderón. Al no poder localizar a éste, visitaron al fiscal Luis H. Rivera, en su residencia. Al enterarse del propósito de la visita, Rivera se negó a continuar atendiéndolos y lo citó para el día siguiente, en sus oficinas, en la fiscalía de Mayagüez.

Al día siguiente, Frederick Rivera Mercado [sic], visitó la oficina del Sr. Fiscal. Luego de entrevistarse con el mismo, desistió de sus propósitos de cambiar la declaración que había dado en la investigación preliminar de los casos. No obstante, algún tiempo después, prestó una declaración jurada ante un

---

[1] El caso fue visto ante jurado produciéndose un veredicto de culpabilidad en ambas acusaciones y sentenciado el reo a pena de reclusión. Este Tribunal Supremo confirmó las sentencias en apelación el 19 diciembre, 1977 (Cr-77-23).

notario retractándose de la que dio en la investigación oficial y exonerando a Roger Rivera de toda culpa en los escalamientos.

Nada hay en la prueba que permita concluir que en presencia del Lcdo. Enrique Vázquez Báez, Roger Rivera usase presiones indebidas sobre Frederick Rodríguez Mercado, para inducirlo a cambiar su declaración. Tampoco hay evidencia de clase alguna que demuestre que, el Lcdo. Vázquez Báez, tuviese conocimiento de que con anterioridad se hubiesen usado presiones indebidas para inducir a Frederick Rodríguez a cambiar su declaración.

Fuera de acompañar a Roger Rivera y a Frederick Rodríguez, facilitando su automóvil y de la ayuda para localizar a un fiscal, nada hizo el querellado para inducir a Frederick Rodríguez a que cambiase algún extremo de la declaración que prestó en la investigación fiscal de los casos pendientes.

Cargo II. En este cargo encontró probado el Comisionado que el Lic. Enrique Vázquez Báez tenía hábito de desaliño en su apariencia personal exhibiendo barba hirsuta y pelo en "afro" descuidado, y de vestimenta impropia, presentándose en las oficinas del tribunal en camisa deportiva o informal, pecho al desnudo, calzando "chancletas" y así en ocasiones se sentaba con el público en sesión del tribunal; que ha mejorado su atuendo y apariencia general posteriormente, pero sigue usando el calzado liviano por problemas circulatorios relacionados con su diabetes, aunque las "chanclas" que usó ante el Comisionado no le parecieron detestables a éste.

En ocasiones el querellado entró al despacho privado de los jueces fumando, con taza de café en la mano, pero nunca se le reprendió por tal conducta.

El 8 de octubre de 1974 en la Sala del Juez Superior Sr. Rubén Fernández Vázquez, en Mayagüez, el querellado se encolerizó porque el juez le llamó la atención sobre la posición de sentado o reclinado sobre una mesa en que se dirigía al tribunal y porque le suspendió un caso criminal para el día siguiente que coincidía con previos compromisos del defensor en Aguadilla. Relata el Comisionado que "el querellado se acercó al estrado y en voz baja le dijo al Hon. Juez que presidía la sala 'que quería verlo no como juez, sino de

macho a macho para arreglar nuestras cuestiones'". Fue condenado por desacato a reclusión en la cárcel, pena que luego el juez modificó y el abogado pagó una multa. Este fue un incidente más en la práctica del querellado ante el juez Sr. Fernández Vázquez, de continua provocación de situaciones lindantes en desacato.

Al querellado le fue impuesto y pagó un desacato porque al prohibirle la Hon. Juez Ferrer en una vista preliminar que grabara el testimonio oral, el querellado "en forma violenta, tomó los expedientes de la mesa donde se encontraban, los tiró frente a los acusados y manifestó 'esto es insólito, búscate otro abogado'. Acto seguido salió bruscamente de la sala...".

Sus relaciones personales con los fiscales eran pobres, y estaban matizadas de vulgaridad y violencia. Hallándose en un grupo al que se acercó el fiscal Sr. Cruz Soto, el querellado lo ofendió, diciendo, "Yo no saludo a todo mierda". En otro incidente con fiscales, relata el Informe: "En ocasión que el [F]iscal Calderón atendía unas vistas preliminares, durante un receso, y sin provocación aparente, el Lic. Vázquez Báez en forma violenta, lo invitó a pelear, alegando que él se había criado en los barrios bajos de Mayagüez y arreglaba sus asuntos 'a gaznatadas'. Aparentemente Vázquez Báez, entendió que el Fiscal Calderón estaba haciendo comentarios sobre su persona durante el receso".

Su práctica de lo criminal, aceptando más casos que los que podía atender, fue objeto de repetidos desacatos por incomparecencia del abogado y creó un verdadero problema para la administración de la justicia en el Tribunal de Distrito.

Cargo III. Quedó probado que el querellado vio el caso de divorcio de su cliente Ramón García Soto el 1 de septiembre de 1977 y el mismo día lo llevó a la presencia de la Juez Ardelie Ferrer para que lo casara. Los blancos correspondientes se llenaron por la Secretaría del tribunal en presencia del

abogado, ajustándose a la información que le dieron los contrayentes. Y relata el Informe del Comisionado:

. . . Una vez terminado el trabajo clerical [*sic*] pasaron a la oficina de la Hon. Juez Ferrer. Sirvieron como testigos la Secretaria Olga Iris Morales y el Lcdo. Enrique Vázquez Báez. La ceremonia se celebró en la oficina que normalmente ocupa el Juez Rocco. Lo que allí se habló, estaba al alcance del oído del querellado. La Hon. Juez Ferrer interrogó, a los contrayentes, [a] García Soto [si] nunca antes había contraído matrimonio. A la Hon. Juez le extrañó, dada la apariencia física agradable y la edad del contrayente. Lo interrogó específicamente sobre ese extremo y García Soto se ratificó en la información previamente suministrada. Manifestó, "bueno, ahora me agarraron".

No surge claro de la prueba, si el Lcdo. Vázquez Báez oyó cuando García Soto dio esa información a la Secretaria del Hon. Juez Rocco. No hay duda de que sí oyó la conversación entre la Hon. Juez Ferrer y García Soto al momento de celebrarse la ceremonia matrimonial.

El Lcdo. Vázquez Báez sabía que la información era falsa. Como cuestión de hecho ese mismo día el Lcdo. Vázquez Báez había representado a García Soto en un caso de divorcio en el Tribunal Superior de Puerto Rico, Sala de Mayagüez. En dicho caso García Soto era el demandante y la demanda fue declarada con lugar en corte abierta. El Lcdo. Vázquez Báez sabía que el Juez que presidió la vista en el caso de divorcio todavía no había firmado la sentencia.

El querellado trata de explicar su silencio, a base de su interpretación de las [d]isposiciones del Código Civil sobre esta materia. Señala, que a su juicio, una persona puede contraer matrimonio inmediatamente después del divorcio ya que no hay nada en ley que se lo impida. Entiende que el nuevo matrimonio así contraído es válido.

No consideramos necesario pasar juicio sobre la interpretación legal que pueda tener el querellado sobre la validez del matrimonio que se celebraba. Sí estamos convencidos de que el querellado estaba obligado moral y legalmente a advertir a la Hon. Juez Ferrer, que la información que suplía su cliente era falsa, más aún, considerando que la información que dan los contrayentes para llenar la licencia matrimonial es bajo juramento, el querellado, con su silencio permitió, no sólo que se

engañase al juez, si que también que el contrayente cometiese un posible delito de perjurio.

Cargo IV. La defensa del querellado en la falta de notificación a su cliente Monsita Sierra sobre el progreso de su demanda de daños y perjuicios, al efecto de que nunca recibió de Secretaría la notificación de sentencia, aun dándole crédito el Comisionado, no salva a su juicio el largo tiempo durante el cual el abogado no mostró interés en informarse del estado del caso en el tribunal.

■ Fueron probados los cargos III y IV y el cargo II en sus incisos 1, 4, 5, 6, 8 y 9 que integran una conducta profesional infractora del Canon 9 de Ética Profesional que conmina al abogado a observar para con los tribunales una conducta que se caracterice por el mayor respeto; del Canon 38 que le instruye a esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, y a que evite hasta la apariencia de conducta profesional impropia, debiendo tanto en su vida privada como en el desempeño de su profesión, conducirse en forma digna y honorable; del Canon 7, que declara altamente impropio de un abogado dar consejo legal para facilitar o encubrir un delito; del Canon 8, que advierte al abogado contra permitir que sus clientes, en el trámite de los asuntos dentro de la relación de abogado y cliente, incurran en conducta que sería impropia del abogado si él la llevase a cabo personalmente; y del Canon 35 en su preceptiva de sinceridad y honradez, cuando declara que la conducta de cualquier miembro de la profesión jurídica ante los tribunales, para con sus representados y en las relaciones con sus compañeros, debe ser sincera y honrada; y que no lo es el recurso a medios inconsistentes con la verdad, como tampoco debe inducirse al juzgador a error valiéndose de artificios o de una falsa relación de los hechos o del Derecho.

Los hechos probados muestran una fundamental incompatibilidad entre el régimen de vida privada y profesional del querellado, y el decoro y dignidad esencial de la profesión de

abogado. El Comisionado atribuye este conflicto a una rebeldía que el propio abogado dice lo lleva a ser agresivo en extremo, y que "ni da ni pide cuartel". Ninguna profesión brinda al hombre mejor oportunidad para luchar contra la injusticia y abrir brecha para eliminar las causas de legítima rebeldía, que la profesión de abogado, pero ello es obra de talento, de estudio, de comunicación civilizada entre adversarios, de habilidad e inteligencia empleadas limpiamente en la defensa de causas, y también de sensibilidad y cultura. A estos recursos es que responden los jueces y demás funcionarios del sistema de justicia y de orden público, y no a la presencia de una figura desagradable presta a envolver el foro de razón en campo de violencia.

Quizás la más grave de sus faltas ha sido su desafío violento en pleno tribunal retando al magistrado a enfrentársele en combate. Nada debe estar más lejos de un hombre de ley que el amago o recurso a la violencia que es la antítesis y negación del orden jurídico. No debe estar en la profesión quien padece estos accesos de regresión a lo primitivo. Nuestra patria tiene derecho a que sus instituciones, sus profesionales, sus gobernantes protejan la civilización de esta marea de violencia y falta de estilo que es carcoma de nuestra cultura.

El abogado que aspire a continuar ejerciendo la profesión que escogió, debe ser ejemplo de dignidad y de urbanidad, si es que vamos a conservar para la abogacía el prestigio que acompañó su nacimiento hace siglos. La judicatura de Puerto Rico es bastión de pureza que todavía sobrevive el ataque vicioso que es signo de la militancia contemporánea, y sobre el abogado recae principalmente la obligación de preservar el honor del magistrado en todos sus actos, no sólo en la tradicional fórmula de "Vuestro Honor" cuando a él se dirige en el tribunal. No podrá haber civilización si decaen la magistratura y la abogacía, brazos inseparables de la Justicia.

El Comisionado cierra su informe con las siguientes afirmaciones:

La formulación de los cargos fue una sacudida emocional beneficiosa para el querellado. Abandonó el ejercicio de la profesión de abogado por algún tiempo, durante el cual se dedicó a atender un pequeño colmado. Al regresar a la práctica de la profesión, su comportamiento mejoró notablemente y en la actualidad el mismo es aceptable. Se ha reconciliado con los jueces agraviados y hoy mantiene buenas relaciones de amistad y compañerismo con ellos. Ha cambiado su manera de vestir y cuida de su apariencia física. También se ha sometido a un régimen de vida que le permite mantener bajo su control su enfermedad.

RESUMIENDO, concluimos que los problemas de comportamiento que presentaba han sido superados.

■ Concluye el Comisionado que los funcionarios a quienes el querellado agravió, le han perdonado y extendido una nueva oportunidad de ajustar su conducta a las normas de respeto y dignidad del foro judicial. En un procedimiento de desaforo la remisión de la culpa no surte efecto de inmersión en el río sagrado que lava el pecado porque el perdón es signo de nobleza en quien lo otorga, mas no necesariamente de enmienda en quien lo recibe. Sin embargo, podrá tomarse como atenuante en el grado de severidad con que esta sociedad, y la profesión jurídica en particular, deben ser desagraviadas. En el caso de este abogado, el perdón no alcanza a subsanar el dañoso efecto acumulativo de la serie de actos que informan su comportamiento.

Las faltas del querellado han sido de tal gravedad que sólo esa anunciada adquisición de autodisciplina y la esperanza de que arraigue e insufle en este abogado los principios de ética y civilidad, modera por ahora la inevitable sanción de su conducta.

*Se decretará la suspensión del querellado en el ejercicio de la profesión de abogado. Cumplido un año y medio de suspensión el Tribunal consideraría su solicitud de reinstalación si en sus méritos garantizare a la sociedad puertorriqueña*

*que el querellado ha reformado permanentemente su carácter y conducta, y si en verdad ha logrado reconciliar ésta con las normas éticas de la profesión.*

El Juez Asociado Señor Negrón García separaría al querellado de la profesión indefinidamente.

