Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| **MIGUEL A. VADI SOTO** Recurrente v. **POLICIA DE PUERTO RICO** Recurridos | KLRA202500334 | **REVISIÓN ADMINISTRATIVA** Procedente de la Comisión de Investigación, Procesamiento y Apelación (CIPA) Caso Núm. **19P-58** Sobre: **Expulsión** |
|---|---|---|

Panel integrado por su presidenta la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 28 de agosto de 2025.

Comparece ante nos, Miguel Vadi Soto, en adelante, Vadi Soto o recurrente, solicitando que revisemos la *"Resolución"* de la Comisión de Investigación, Procesamiento y Apelación, en adelante, CIPA, del 7 de mayo de 2025. Mediante el dictamen recurrido, la CIPA desestimó la apelación incoada por el recurrente, para impugnar la medida disciplinaria de expulsión que le impuso el Negociado de la Policía de Puerto Rico (PPR), en adelante, Negociado o recurrido.

Por los fundamentos que expondremos a continuación, *confirmamos* la determinación recurrida.

### I.

Vadi Soto, quien fungía como Agente de la PPR, y Widaliz Avilés Cajigas, en adelante, Avilés Cajigas, eran una pareja consensual para la fecha del 7 de febrero de 2017.[1] En la mencionada fecha, el recurrente y Avilés Cajigas tuvieron un

---

[1] Apéndice del recurso, carta del 16 de febrero de 2017. Transcripción de la prueba oral, págs. 6-8.

incidente doméstico violento, que involucró agresión física y amenaza de muerte.[2] Surge de los documentos que obran en autos, que Avilés Cajigas recurrió a las autoridades y que, mientras era entrevistada por la Agente Jannette Acevedo Soto, en adelante, Acevedo Soto, Vadi Soto la llamó y lo puso en alta voz.[3] Según la documentación aludida, la agente escuchó al recurrente amenazar de varias formas a Avilés Cajigas.

Por estos hechos, Vadi Soto enfrentó varias denuncias por delito grave, en consecución a la violación de varios artículos de la Ley Núm. 54-1989, mejor conocida como la Ley para la Prevención e Intervención con la Violencia Doméstica.[4] Además, una investigación administrativa fue incoada contra el recurrente. Como fruto de la misma, el 16 de febrero de 2017, la PPR remitió una carta dirigida a Vadi Soto para expulsarlo de sus funciones.[5] Explica la misiva que, además de las denuncias, pesaba en su contra una violación al Artículo 14, Sección 14.5 Número 9, Número 27 y Número 30 del Reglamento de Personal de la Policía de Puerto Rico, Reglamento Núm. 4216 del 11 de mayo de 1990.

Inconforme, el 21 de diciembre de 2018, el recurrente apeló ante la CIPA la determinación del Negociado.[6] Transcurridos poco más de cuatro (4) años, el 3 de agosto de 2023, la CIPA celebró una vista, en la que compareció Vadi Soto, Avilés Cajigas, la Agente Acevedo Soto y el Teniente II Hediberto Badillo Velázquez. Sin embargo, el 17 de agosto de 2023 la misma fue desestimada, por entender la agencia recurrida que Vadi Soto había incurrido en las faltas imputadas.[7] Entre sus determinaciones de hechos, la CIPA concluyó que, "la señora Avilés Cajigas no quiso declarar en el

---

[2] Apéndice del recurso, carta del 16 de febrero de 2017. Transcripción de la prueba oral, págs. 6-8.
[3] Apéndice del recurso, carta del 16 de febrero de 2017.
[4] *Id.*
[5] *Id.*
[6] Apéndice del recurso, *"Apelación"* de Vadi Soto.
[7] Apéndice del recurso, *"Resolución"* de la CIPA.

proceso criminal y se retractó de sus declaraciones anteriores". Sobre el testimonio de Acevedo Soto, resaltó "que la señora Avilés Cajigas le manifestó que no quería que el señor Vadi Soto fuera a la cárcel".[8] También expresó que en las fotos evaluadas se reflejaban golpes y hematomas en el cuerpo de Avilés Cajigas, producto de los hechos del caso de epígrafe.[9] El 7 de mayo de 2025, la determinación de la CIPA fue notificada.[10]

Así las cosas, el 5 de junio de 2025, Vadi Soto recurrió ante esta Curia mediante un recurso de *"Revisión Administrativa"*, en el que hizo el siguiente señalamiento de error:

> **Erró la Comisión de Investigación, Procesamiento y Apelación al determinar que el recurrente incurrió en las faltas imputadas y que procedía su expulsión del Negociado de la Policía de Puerto Rico.**

El 6 de junio de 2025, emitimos una *"Resolución"* en la que concedimos a la parte recurrida hasta el 7 de julio de 2025, para presentar su posición en cuanto al recurso, conforme dispone la Regla 63 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 63. Sin embargo, el 12 de julio de 2025, el recurrente solicitó la regrabación de los procedimientos realizados ante la CIPA.

En cumplimiento de una orden del Tribunal, la CIPA puso a disposición de Vadi Soto la regrabación de la Vista Administrativa, y ordenó a su vez, que la misma fuera transcrita y presentada ante esta Curia para el 25 de agosto de 2025.

Recibida y evaluada la transcripción de la prueba, así como el recurso presentado, procedemos a resolver.

---

[8] Apéndice del recurso, *"Resolución"* de la CIPA.
[9] *Id.*
[10] *Id.*

## II.

### A. Revisión Administrativa

Sabido es que, en nuestro estado de derecho actual, las decisiones, órdenes y resoluciones finales de los organismos administrativos están sujetas a la revisión del Tribunal de Apelaciones. Artículo 4006 (c) de la Ley de la Judicatura de Puerto Rico, Ley Núm. 201-2003, 4LPRA sec. 24; Ley Núm. 38-2017 Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante, LPAUG, 3 LPRA secs. 9671 y 9672; Regla 56 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamemnto TA,* 2025 TSPR 42, pág. 75, 215 DPR ___ (2025); *Simpson, Passalaqua v. Quiros, Betances,* 2024 TSPR 64, 214 DPR __ (2024); *Miranda Corrada v. DDEC, et al.*, 211 DPR 738, 745 (2023); *OEG v. Martínez Giraud,* 210 DPR 79, 88 (2022); *AAA v. UIA*, 200 DPR 903, 910 (2018). El objetivo principal de la revisión judicial consiste en auscultar si la agencia administrativa actuó de conformidad a las facultades que fueron conferidas por Ley. *Ruiz Matos v. Dept. Corrección*, 213 DPR 291, 296 (2023); *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 113-114 (2023); *Pérez López v. Depto. Corrección,* 208 DPR 656, 672 (2022).

De ordinario, estas revisiones proceden al adjudicarse finalmente todas las controversias en consideración de la agencia y al agotarse todos los remedios administrativos disponibles para un litigante. *Buxó Santiago v. ELA et als.,* 2024 TSPR 130, 215 DPR __ (2024); *Miranda Corrada v. DDEC, et al.*, supra, pág. 746; *Pérez López v. Dpto. Corrección*, supra, pág. 672; *Fonte Elizondo v. FR Conts.* 196 DPR 353, 358 (2016). Además, la facultad de cuestionar una determinación administrativa forma parte del debido proceso de ley, el cual es un derecho con rango constitucional. *ACT v. Prosol et als.*, 210 DPR 897, 908 (2022); *Asoc. Condomines v. Meadows Dev.*, 190 DPR 843, 847 (2014).

Empero, huelga decir que "la revisión judicial no es equivalente a una sustitución automática del criterio e interpretación del ente administrativo." *Hernández Feliciano v. Mun. Quebradillas,* supra, págs. 115-116; *Capó Cruz v. Jta. Planificación, et al.,* 204 DPR 581, 591 (2020). A tenor con ello, el foro apelativo debe hacer distinción entre los asuntos consistentes a la discreción o pericia de la agencia, y las controversias relacionadas a la interpretación estatutaria, en las cuales los tribunales son especialistas. *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 116; *OCS v. Point Guard Ins.,* 205 DPR 1005, 1028 (2020).

El foro judicial debe conceder deferencia a las decisiones de las agencias administrativas por razón de la experiencia y el conocimiento especializado que estas poseen sobre los asuntos que se les han delegado. *Katiria's Café Inc. v. Mun. Aut. San Juan,* 2025 TSPR 33, 215 DPR __ (2025); *Jusino Rodríguez v. Junta de Retiro,* 2024 TSPR 138, 215 DPR __ (2024); *Otero Rivera v. USAA Fed. Savs. Bank,* 2024 TSPR 70, 213 DPR __ (2024); *Voilí Voilá Corp. B. Mun. Guaynabo,* 213 DPR 743, 754 (2024); *Hernández Feliciano v. Municipio de Quebradillas,* supra, pág. 114; *OEG v. Martínez Giraud,* supra, págs. 88-89; *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018). Cónsono con lo anterior, los dictámenes administrativos están revestidos de una presunción de legalidad y corrección, la cual subsiste, mientras que la parte que los impugna no produzca suficiente evidencia para derrotarla. *Katiria's Café Inc. v. Mun. Aut. San Juan,* supra; *Transp. Sonell v. Jta. Subastas ACT,* 2024 TSPR 82, 214 DPR __ (2024); *Otero Rivera v. USAA Fed. Savs Bank,* supra; *Voilí Voilá Corp. v. Mun. Guaynabo,* supra; *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 114; *OEG v. Martínez Giraud,* supra, pág. 89; *Rolón Martínez v. Supte. Policía,* supra, pág. 35.

Sin embargo, nuestro más Alto Foro recientemente dispuso, acogiendo así la normativa que impera en el Foro Federal, que la deferencia administrativa debida *no se extiende a las determinaciones de derecho. Vázquez, Torres vs. Consejo Titulares et al.,* 2025 TSPR 56, 215 DPR ___ (2025). Es decir, la deferencia de los foros judiciales a las agencias administrativas continua vigente para las determinaciones de hecho que estas realicen. Sin embargo, conforme al cumplimiento de las facultades revisoras sobre el derecho, estamos instruidos por nuestro Tribunal Supremo a revisar, sin los amarres de la deferencia, las determinaciones de derecho de las agencias administrativas. *Id.* Por su parte, la LPAUG, supra, sec. 9675 dispone que "[l]as determinaciones de derecho pueden ser revisables en todos sus aspectos por el tribunal".

Por todo lo cual, el precitado caso reza de la siguiente manera:

[l]a interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. Así, enfatizamos la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, supra. Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, *será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos.*

*Vázquez, Torres vs. Consejo Titulares et al.,* supra.
(Énfasis suplido).

Así, los tribunales, para lograr su encomienda, deberán evaluar los siguientes tres (3) aspectos: 1) si el remedio concedido fue el apropiado; 2) si las determinaciones de hecho están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad; y 3) si se sostienen las conclusiones de derecho realizadas por la agencia. *Katiria's Café Inc. v. Mun. Aut. San Juan,* supra; *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 115; *OEG* v. *Martínez Giraud,* supra, pág. 89; *Moreno Lorenzo y otros v. Depto. Fam.,* 207 DPR 833, 839-

840 (2021); *Capó Cruz v. Jta. Planificación et al.,* supra, pág. 591; *Torres Rivera v. Policía de Puerto Rico,* supra, págs. 626-627.

**B. Ley CIPA**

La Ley de la Comisión de Investigación, Procesamiento y Apelación, Ley Núm. 32-1972, 1 LPRA sec. 171 *et seq.*, en adelante, Ley de la CIPA, se promulgó con el fin de crear una comisión para atender los casos de mal uso o abuso de autoridad de ciertos funcionarios públicos y fungir como foro apelativo en determinados casos. *Torres Rivera v. Policía de PR*, 196 DPR 606, 620-621 (2016); *Arocho v. Policía de PR*, 144 DPR 765, 769-770 (1998). La CIPA actuará como cuerpo apelativo con jurisdicción exclusiva para oír y resolver apelaciones interpuestas por los miembros de la uniformada cuando se les haya impuesto cualquier medida disciplinaria con relación a una falta grave. *Torres Rivera v. Policía de PR*, supra, pág. 662. *Ramírez v. Policía de PR*, 158 DPR 320, 332 (2002); Art. 2(2) de la Ley Núm. 32-1972, 1 LPRA sec. 172. En virtud de las anteriores funciones y facultades, el Art. 3 de la Ley Núm. 32-1972, 1 LPRA sec. 173, establece que la CIPA tiene autoridad para:

(1) Realizar cualquier investigación autorizada por esta ley, en cualquier sitio en el Estado Libre Asociado de Puerto Rico;

(2) celebrar las reuniones que considere necesarias;

(3) celebrar vistas públicas o privadas, las cuales podrán ser presididas por cualquier Comisionado que designe el Presidente y con audiencia de las partes interesadas.

La vista celebrada ante la CIPA, es una especie de juicio *de novo,* donde el organismo administrativo tiene la oportunidad de escuchar toda la evidencia y otorgarle el valor probatorio que a su juicio merezca. *Ramírez v. Policía de PR*, supra, pág. 332. En lo pertinente al proceso de la vista, el Art. 2 (2) de la Ley Núm. 32-1972, supra, estableció que "[l]a Comisión, luego de celebrar la vista correspondiente, según lo dispuesto en el Art. 3, Inciso (3), podrá

confirmar, revocar o modificar la determinación o actuación de la cual se hubiere apelado, o podrá imponer cualquier sanción que la autoridad facultada para sancionar hubiese podido imponer". *Torres Rivera v. Policía de PR*, supra, pág. 621. Sobre la vista celebrada ante la CIPA, nuestro Tribunal Supremo aclaró:

> Nótese, pues, que la vista que se celebra ante la C.I.P.A. es propiamente una vista formal, porque en ella se ventilan de manera definitiva, a nivel administrativo, todos los derechos del empleado, y las determinaciones de hecho de esa agencia están sujetas, únicamente, al limitado ámbito de la revisión judicial. En este sentido, es equivalente a un juicio en sus méritos.
>
> *Ramírez v. Policía de PR*, supra, págs. 333-334.

Por consiguiente, la celebración de la vista ante la CIPA logra el cumplimiento cabal con el debido proceso ley y garantiza el derecho a ser oído de los empleados. *Torres Rivera v. Policía de PR*, supra, pág. 624.

### C. Reglamento de Personal de la Policía de Puerto Rico

Previo a la aprobación de la Ley de la PPR, supra, la Legislatura de Puerto Rico aprobó la derogada Ley de la Policía, Ley Número 26 de 22 de agosto de 1974. Esta fue creada con el fin de establecer una estructura administrativa organizada y de óptimo reclutamiento y adiestramiento. Un año más tarde, se aprobó la Ley de Personal del Servicio Público, Ley Número 5 del 14 de octubre de 1975, que posteriormente fue también derogada. Este estatuto buscaba que el reclutamiento en el Gobierno de Puerto Rico consistiera en una empleomanía competente y apta.

Al amparo de estos dos estatutos, el 11 de mayo de 1990 se creó el Reglamento de Personal de la Policía de Puerto Rico, Reglamento Núm. 4216, en adelante, Reglamento 4216. *Torres Rivera v. Policía de PR*, supra, pág. 619. Según la introducción del mismo, el precitado reglamento procuró garantizar una

administración de personal efectiva, que sirviera a los mejores intereses de la política pública del país.

Por ser relevante al caso de marras, señalamos el Artículo 14 del Reglamento Núm. 4216, sobre la "Retención de Empleo". Específicamente la Sección 14.5 del referido Reglamento establece como faltas graves, entre otros, lo siguiente:

> Se considerarán faltas graves las siguientes:
> […]
> 9. ***Usar lenguaje ofensivo, impropio o denigrante contra*** el Gobernador, Miembros de la Legislatura, Rama Judicial, Rama Ejecutiva, Agencia, Instrumentalidades del Estado Libre Asociado de Puerto Rico, Miembros de la Fuerza, Funcionarios y Empleados de la Policía, o cualquier otra Institución debidamente constituida o ***contra cualquier ciudadano particular.***
> […]
> 27. Observar una ***conducta lesiva, inmoral o desordenada*** en detrimento del Cuerpo de la Policía.
> […]
> 30. Visitar casas de prostitución o ***realizar cualquier otros actos que sean contrarios al pudor, honestidad y buenas costumbres de la sociedad***. […].
> […]
>
> Artículo 14, Sección 14.5 (9), (27) y (30) del Reglamento Núm. 4216.
> (Énfasis suplido).

Ahora bien, la Sección 14.3 del Reglamento en cuestión desglosa las acciones disciplinarias que se podrán imponer sobre los miembros de la uniformada. El mismo expresa que "[e]l castigo a imponerse por falta grave podrá ser uno de los siguientes: expulsión del Cuerpo, degradación o suspensión de empleo y sueldo por un período no mayor de cinco (5) meses, […]". *Torres Rivera v. Policía de PR*, supra, pág. 620.

### D. Estándar probatorio

En cuanto al quantum de prueba en los casos que versan sobre la expulsión de un funcionario público, la CIPA puede requerir

un quantum más riguroso que la mera preponderancia de prueba de las partes en conflicto. Esto no contradice el estándar de revisión de "razonabilidad de la decisión" siempre que esta esté sostenida en la evidencia sustancial que obra en el expediente, pues el quantum de la prueba requerida en la vista formal es cosa distinta al estándar de revisión.

Como se sabe, de ordinario, el quantum de prueba necesario para probar un caso en el ámbito administrativo es el de preponderancia de la prueba y no el quantum intermedio conocido como prueba clara, robusta y convincente o el más exigente, el de duda razonable que se impone en los casos criminales. *Trib. Exam. Méd. v. Cañas Rivas*, 154 D.P.R. 29, 36-37 (2001); *Pagán Hernández v. U.P.R.,* 107 DPR 720, 749 (1978).

Nuestro más Alto Foro expresó que "[a]unque el referido estándar de prueba no es susceptible de una definición precisa, la prueba clara, robusta y convincente ha sido descrita como aquella evidencia que produce en un juzgador de hechos una convicción duradera de que las contenciones fácticas son altamente probables". *In Re Ramos Mercado*, 165 DPR 630, 641 (2005); *In Re Soto Charraire*, 186 DPR 1019, 1028 (2012).

Es decir, cuando la cuestión a resolver esté relacionada con un proceso disciplinario y, con ello, el derecho al trabajo o a mantener parcial o permanentemente la fuente principal de sustento, independientemente de que la parte querellada se trate de un juez, un abogado o un policía, no albergamos duda alguna de que el estándar probatorio tiene que ser robusto y no la mera preponderancia. Está firmemente establecido en nuestra jurisprudencia que "[p]ara la negación de un derecho fundamental, el debido proceso de ley exige que el valor y suficiencia de la prueba sea medido con el criterio de prueba clara, robusta y convincente". *OEG v. Martínez Giraud*, supra, pág. 97; *Colón Pérez v. Televicentro*

*de P.R.,* 175 DPR 690, 725 n.30 (2009), que cita a *P.P.D. v. Admor. Gen. De Elecciones,* 111 DPR 199, 223 (1981) y a *In re Caratini Alvarado,* 153 DPR 575, 584 (2001).

**III.**

El recurrente planteó que la CIPA se equivocó al denegar su apelación. Arguye que su expulsión de la PPR no procedía ya que, según este, durante la investigación administrativa, se demostró que Avilés Cajigas mintió con relación a su denuncia. Sostiene que, por no haber prosperado el caso en el ámbito criminal, el Negociado no podía despedirlo. *No le asiste la razón.*

Consideramos que es importante atender el error señalado por el recurrente, en primera instancia, desde la óptica del estándar probatorio. Huelga decir que, el estándar probatorio en el ámbito penal – el de más allá de duda razonable – es el más riguroso. Sin embargo, en los procesos de naturaleza administrativa, y sobre un empleado público, el análisis debe cumplir con prueba robusta y clara.

Por ello, destacamos el caso de *San Vicente v. Policía de P.R.,* 142 DPR 1 (1996). En el mismo, un agente del orden público enfrentó cargos criminales por violencia doméstica, que luego fueron archivados por falta de cooperación de la perjudicada. Así como en el caso de autos, en *San Vicente v. Policía de P.R.,* supra, el agente fue removido de sus funciones, luego de una investigación administrativa. Este impugnó hasta el más Alto Foro su destitución. Sin embargo, no prosperó. El Tribunal Supremo revocó a la CIPA, quien había sustituido la expulsión del agente por una suspensión temporal. Razonó, pues, nuestra Máxima Curia que independientemente de lo ocurrido en el foro judicial, la investigación administrativa demostró que el agente incurrió en brutalidad y violencia contra la perjudicada, y que ello afectó, no solo a esta última, sino la imagen de la PPR. En miras a fortalecer

su razonamiento, nuestro Alto Foro destacó la siguiente cita, a la que ahora hacemos eco:

> Nada debe estar más lejos de un hombre de ley que el amago o recurso a la violencia que es la antítesis y negación del orden jurídico. ***No debe [ser miembro de la Policía de Puerto Rico] quien padece estos accesos de regresión a lo primitivo.*** Nuestra patria tiene derecho a que sus instituciones, sus profesionales, sus gobernantes, protejan la civilización de esta marea de violencia y falta de estilo que es carcoma de nuestra cultura.
>
> *San Vicente v. Policía de P.R.,* supra, pág. 7, citando a *In re Vázquez Báez,* 110 DPR 628, 636 (1981).
> (Énfasis nuestro).

Establecido lo previo, concluimos que el Negociado no erró al destituir al recurrente y la CIPA no abusó de su discreción al desestimar la apelación de Vadi Soto por entender que este incurrió en faltas graves, según el Reglamento Núm. 4216.

Durante la Vista Administrativa del 3 de agosto de 2023, la CIPA escuchó y aquilató los testimonios de Avilés Cajigas y Acevedo Soto. De los testimonios de ambas surge que, el 7 de febrero de 2017, producto de una discusión con su pareja, Vadi Soto arremetió contra Avilés Cajigas. Como parte del testimonio de la perjudicada, corroborado por Acevedo Soto, se desprende que el recurrente agredió mediante puños,[11] asfixie,[12] halones de cabello,[13] arrastre físico,[14] amenazas de muerte[15] y aislamiento e incomunicación a Avilés Cajigas.[16] Además la Agencia pudo evaluar las fotos sobre el estado físico de esta el día de los hechos.[17] También testificó la agente que realizó la querella inicial y quién presuntamente escuchó al propio recurrente amenazando a Avilés Cajigas. Además, de los testimonios vertidos en la Vista Administrativa surgió que Avilés

---

[11] Transcripción de la prueba oral, págs. 7 y 41.
[12] *Id.*, págs. 6-7 y 41.
[13] *Id.*, págs. 7 y 41.
[14] *Id.*, págs. 7, 41-42.
[15] *Id.*, págs. 7 y 42.
[16] *Id.*, págs. 8 y 42.
[17] *Id.*, págs. 48-50.

Cajigas *se retractó de sus declaraciones, en el proceso criminal,* porque no quería que el recurrente fuera a la cárcel.[18]

Es nuestra apreciación que, con esta prueba, la cual consta en sus determinaciones de hechos, la CIPA contaba con prueba robusta, clara y convincente para determinar que Vadi Soto, como agente de la PPR, incurrió en conducta impropia, ofensiva, desordenada, lesiva y contraria a las buenas costumbres de la sociedad. Según el Reglamento Núm. 4216, esto era suficiente para la expulsión del recurrente.

**IV.**

Por los fundamentos que anteceden, *confirmamos la "Resolución" recurrida.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

---

[18] Transcripción de la prueba oral, pág. 12.